619 So.2d 980 (1993)
Gayle Deschaine WILLIAMS and Garris Williams, Etc., Appellant,
v.
David W. POWERS, etc., et al., Appellee.
No. 92-403.
District Court of Appeal of Florida, Fifth District.
April 23, 1993.
Rehearing Denied June 21, 1993.
*981 Delia A. Doyle, Ormond Beach, and Patricia A. Doherty of Wooten, Honeywell & Kest, P.A., Orlando, for appellants.
Andrew G. Pattillo, Jr., and Kelly G. Hamer of Pattillo & McKeever, P.A., Ocala, for appellee Citrus County Hosp. Bd. of Trustees d/b/a Citrus Memorial Hosp.
No appearance for appellee David W. Powers.
W. SHARP, Judge.
Gayle and Garris Williams appeal from an order dismissing their medical malpractice suit against Citrus County Community Hospital Board of Trustees, d/b/a Citrus Memorial Hospital. Although an evidentiary hearing was held at which documentary evidence was admitted and the attorney for the Williamses testified, the court's ruling was limited to its finding that their notice of intent to initiate litigation addressed to the hospital failed to meet the requirements of the Medical Malpractice Act, sections 766.106(2) and 766.203(2), and thus their suit should be dismissed, pursuant to section 766.206(2). We disagree and reverse.
The record in this case establishes that the Williamses' infant son died on May 20, 1988, after having been treated at the hospital for a head injury. The Williamses requested the complete medical records concerning the child's treatment at the hospital on May 16, 1989. They retained an out-of-state medical expert, Dr. Miller, to review the hospital records and other reports.
On April 24, 1990, the Williamses mailed a notice of intent to initiate suit for medical malpractice against the hospital and two doctors. Attached to the notice was a statement by Dr. Miller that in her opinion, there were reasonable grounds to support a claim of medical malpractice. This statement was revised and sent with an amended notice of intent on May 18, 1990 to the hospital. It was notarized and provided as follows:

AFFIDAVIT
Corroboration of reasonable grounds to support claim of medical negligence against Dr. David W. Power, Dr. John Campbell and Citrus Memorial Hospital.
STATE OF CALIFORNIA)
COUNTY OF S.F.
Before me, the undersigned authority, personally appeared Carol Miller, M.D., who after being duly sworn, deposes and says:
1. Based upon my review of information surrounding the care and treatment provided to Bryan Garris Williams and my medical expertise and training, it is my opinion there are reasonable grounds to support a claim of medical negligence.
2. This will further verify that no prior opinion by the undersigned has been disqualified.
3. Further affiant sayeth not.
Also on May 18, 1990, the Williamses filed their suit against the hospital and others. Later, the hospital requested a description of the medical negligence. The Williamses responded:
The Defendant, Citrus County Hospital Board of Trustees d/b/a Citrus Memorial Hospital by and through it's [sic] agents, apparent agents, and employees, exercising ordinary skills or any reasonable care and practice within their profession within the operation of general hospital, should have monitored, supervised, recognized, identified, treated, provided proper evaluation testing of the decedent while providing medical and hospital services *982 including but not limited to radiological procedures and evaluation.
Contrary to the aforesaid standard of care required of this hospital and their staff, agents and employees, Citrus County Hospital Board of Trustees d/b/a Citrus Memorial Hospital for the decedent were negligent and carelessly performed by the Hospital. Further, the hospital is specifically vicariously liable for the herein described negligent actions of the potential Defendants, John Campbell, M.D. and/or Jackson L. Straub, M.D., P.A. and David W. Powers, M.D., and David W. Powers, M.D., P.A.
On July 18, 1990, the hospital rejected the Williamses' claim for malpractice regarding their child. It did not provide any corroborating, "verified written medical expert opinion" to bolster its rejection, as contemplated by section 766.203(3)(b). The hospital argued none was required because the Williamses' corroborating opinion was so vague.
Each side accused the other of "stonewalling" and failure to cooperate in the mandatory presuit investigation procedures provided for by the statute. Motions for sanctions were made by both sides, and at a lengthy hearing extended to a later date, much argument about the meaning of the Medical Malpractice Act and its application to this case was advanced, but little progress was made.
The Williamses argued that their second intent to sue letter met the requirements of section 766.203(2). That section provides:
(2) Prior to issuing notification of intent to initiate medical malpractice litigation pursuant to s. 766.106, the claimant shall conduct an investigation to ascertain that there are reasonable grounds to believe that:
(a) Any named defendant in the litigation was negligent in the care or treatment of the claimant; and
(b) Such negligence resulted in injury to the claimant.
Corroboration of reasonable grounds to initiate medical negligence litigation shall be provided by the claimant's submission of a verified written medical expert opinion from a medical expert as defined in s. 766.202(5), at the time the notice of intent to initiate litigation is mailed, which statement shall corroborate reasonable grounds to support the claim of medical negligence.
The trial court reasoned that the expert's opinion was so conclusory, it could not properly serve to trigger all the duties imposed on the hospital by the statute's presuit investigation procedures. The Williamses argued they were not furnished with all the medical records and reports requested from the hospital until after suit was filed, so their investigation and theory of malpractice was not complete, but they had enough to have an expert assert the hospital was negligent in not providing appropriate radiological procedures and evaluation of the child's head injury.
When pressed at the hearing to detail what steps the attorney for the Williamses (or their agents) took to make a reasonable investigation of the claim and whether there was a reasonable basis for the suit, the attorney put some records and documents in evidence, and proffered others only if viewed in camera by the court after asserting work product and attorney-client privilege and citing to section 766.205(4).[1]
This new statute appears to abound with difficulties for both sides and perhaps should be revisited by the Legislature. *983 However, if it is not to be allowed to impinge upon plaintiffs' right of access to the courts,[2] it must be construed as imposing on plaintiffs only reasonable and limited duties, for a limited time, before allowing them to file suit in courts of this state. Here, the lawsuit was stayed for ninety days (although it was technically filed prematurely). During that time and prior to the lawsuit being filed, the parties made an exchange of information and documents. How reasonable the Williamses' investigative efforts were during those time frames, and any reasonable basis for their suit they discovered as a result of such investigations, should have been the focus of the hearing below. The counterpart should have been the hospital's reasonable cooperation with the Williamses' investigation, its own investigation, and the viability of any defense it developed in this proceeding. Obviously, some privileged material could be involved. But there are in camera techniques which would permit the court to view the materials, if needed, and seal recorded testimony if necessary to preserve appeal rights.[3]
In this case, we think the Williamses' corroborative expert opinion was barely adequate to support the intent to sue letter. It was thus critical that they come forward with proof of steps they took to reasonably investigate their claim, and the existence of a reasonable basis therefor. As the court explained in Duffy v. Physicians Protective Trust Fund, 614 So.2d 539 (Fla. 1st DCA 1993), failure to provide an adequate verified written medical expert opinion is not "dispositive" in dealing with a medical malpractice defendant's "response" rejecting a claim pursuant to section 766.203(3), although the court said such a conclusory opinion was prima facie evidence of the lack of a reasonable basis to deny a claim. Sanctions were imposed in Duffy, pursuant to section 766.206(3), primarily because the defendant failed to make this additional showing.
Accordingly, we reverse the order appealed in this case and remand for further proceedings.
REVERSED and REMANDED.
DIAMANTIS, J., and WHITE, A.B., Associate Judge, concur.
NOTES
[1] Section 766.205(4) provides:

(4) No statement, discussion, written document, report, or other work product generated solely by the presuit investigation process is discoverable or admissible in any civil action for any purpose by the opposing party. All participants, including, but not limited to, hospitals and other medical facilities, and the officers, directors, trustees, employees and agents thereof, physicians, investigators, witnesses, and employees or associates of the defendant, are immune from civil liability arising from participation in the presuit investigation process. Such immunity from civil liability includes immunity for any acts by a medical facility in connection with providing medical records pursuant to s. 766.204(1) regardless of whether the medical facility is or is not a defendant.
[2] Stebilla v. Mussallem, 595 So.2d 136 (Fla. 5th DCA 1992).
[3] Fla.R.Civ.P. 1.280.